vs. Ogden. Mr. Cooper. Good morning. My name is Christopher Cooper. I represent Plaintiff and Appellant Kirk Homoky. By Homoky's actions, he was asserting his right not to incriminate himself. By his actions, he was attempting to prevent rescission of his previously received garrity warrants. Defendants sought for Homoky to convert his garrity status. And we know that state actors are prohibited from coercing a police officer into relinquishing a constitutional guarantee under threat of losing employment. Gardner vs. Broderick tells us there is no doubt of a police officer's constitutional, guarded privilege to refuse to respond to questions when and where the result may be self-incriminating. Your main initial problem in this case was that your client didn't take the voice stress test. That is correct. And so far as I can see, lost not a penny as a result of not taking the voice stress test. He wasn't criminally prosecuted. He was. Not with this information because he didn't get it. Your Honor, this speaks to the issue of duress. And I want to cite to Garrity at page 499 where the court makes clear duress is inherent in deciding to waive one or the other. And I'm quoting from the case. It is always for the interest of a party under duress to choose. I'm not dealing with my question. I ask how there's any claim here given the fact that your client does not appear to have suffered any injury from his decision not to take the voice stress test. Your Honor, I respectfully disagree. My client was suspended. My client was actually paid in full, I gather. At some point, money was reimbursed. But at some other point, he was brought before a police board and termination was sought. Now, granted his injury request to fire him was made and he was not fired. Correct. Right. We don't have litigation about or we're not supposed to have litigation about requests that other people made that came to nothing. Your Honor, in this case, the issue is my client was put in a position where he was told you relinquish your previously received Garrity warnings or you will lose your job. That's the issue. Yeah, but the problem is he didn't lose his job. That's the point. There's no tangible loss. I mean, you can't point to a tangible loss. He did get reassigned because he was cleaning the toilets, doing this janitorial work for a period of time, but he still got paid his full salary and he got reimbursed for the two days he was suspended. So, Your Honor, I distinguish this case between Schwick. So, in Schwick, this court left open the possibility that a plaintiff could assert reputational damage. You can't even prove the because it's not like he applied for a position with another police department. You know, he had that other side job, but that was like a security job. So, that's not like the whole stigma plus argument you're making. I don't see that either. I don't think you have the facts here. Well, Your Honor, it's certainly difficult to prove that he did suffer stigma damage. However, I think there is evidence that perhaps a jury should consider as to whether or not the allegations against Officer Hamaki would cause a reasonable person to perceive Officer Hamaki in the light, in the negative light. Your client pleaded guilty. I'm sorry, Your Honor? How does your client say, I suffered a reputational injury from not taking his stress test and a proposal being made to fire me, when he was later criminally prosecuted and pleaded guilty? He did not plead guilty, Your Honor. I thought that's what the record showed. Your Honor, he did not plead guilty. Was he convicted? No, he was not. Once again, I certainly hear what you're saying, Judge Easterbrook, and what you're saying. Wait a minute, your own brief says he did, and then it says, but he got a diversionary sentence, so we're ignoring it. That's a guilty plea. Your Honor, I wouldn't consider a PDP. A pretrial diversion is not a guilty plea, in my opinion. The Supreme Court has held that a plea producing a diversionary sentence is a guilty plea for purposes of federal law. That's important for things like gun disabilities. That's the Supreme Court's holding. It's certainly my client's understanding, Your Honor, that when he took the pretrial diversion, that it would not be considered a guilty plea, and that the record is now sealed. If I may, just for the record, just point to Garrity at page 499, that although in the end, he kept his job, the fact that he had to therefore, there are damages. And Garrity also points us to, and I'll spell it L-I-S-E-N-B-A, Lisbon versus California, 314 U.S. 219, where the court writes, the question is whether the accused was deprived of his free choice to admit, deny, or refuse to answer. So the position of Officer of Adverse Action, as well, he suffered damages because he was put in a position where he had to choose between keeping his Garrity rights or relinquishing his Garrity rights. That's a pretty creative theory on your part, in terms of this material adverse action, because there's no, you don't really have any authority that says that. Well, my, I'm looking to Lisbon at page 241, I'm looking to Garrity at 499, and my interpretation of those two cases is that the damage was done in that room when there was an effort to cause Mr. Hamaki to give up his involuntariness. He was put between a rock and a hard place. And I also refer to court to Boyd versus the United States, which dealt with this very issue. Hamaki was presented with an election between rescinding, taking back his involuntariness, or losing his employment. You're in the rebuttal time, if you want to say anything. If I may, yes, that's not a problem for me, Your Honor. When the Garrity case was before the New Jersey Supreme Court, the officers at this point had already spoken, they had already given testimony. And when the officers showed up and said, hey, listen, we should not have been forced to give testimony, the New Jersey Supreme Court essentially said, we don't care. And this would or could have been Officer Hamaki's predicament, and what I would call a nightmare. And I'm asserting that Officer Hamaki suffered as a result, that there are damages pursuant to what happened in that Boyd stress test room, and that what happened afterwards, although at some point, both the police chief and the police board said, okay, there wasn't an apology, but it stopped the process and said, we're going to put you back to work. In reality, he wasn't put back to work. He was assigned to janitorial duties. Thank you. Okay. Thank you, Mr. Cooper. Mr. Boyles. Good morning, Your Honors. May it please the court. Hamaki's position with regard to the Fifth Amendment claim, obviously, he's trying to apply the Fifth Amendment through the 14th Amendment. And the Fifth Amendment provides that no person shall be compelled in any way, any criminal proceeding or criminal case to be a witness against himself. The absence of any statements by Mr. Hamaki, and the absence of any criminal case, defeats Hamaki's core Fifth Amendment arguments. The fact that criminal charges were later brought against him does not, after the completion of the internal investigation, does not change the fact that Hamaki was being afforded the protections under the Garrity rule. Officer Hamaki was advised of his protections under Garrity during the internal investigation. He signed a statement of rights on November 15th, indicating that he understood the rights afforded him under Garrity. And Hamaki's subjective belief that at some point in the future, these statements, if he had made them, would be used against him does not create an issue of genuine material fact for this court. I think it's important, at no time did White, Suzuki, or Ogden attempt to take away Hamaki's rights under Garrity. At all points, he was afforded the protections of Garrity, and was advised that any statements that he chose to make could not be used against him in any subsequent criminal proceeding. Not only any statements, but any fruit of those statements. And again, not to reiterate this point too much, but it's important that Hamaki chose not to make any statements, but rather chose not to participate in the Boyce stress test. As the district court noted, Garrity doesn't stand for the proposition that Hamaki has a right not to be investigated. It just means that the statements he chooses to make in that investigation can't be used against him. If we look at the analysis then under the 14th Amendment with regard to due process, obviously no person shall be deprived life, liberty, or property without due process of law. As noted by the Supreme Court in Lewis, deprivation of liberty can be caused by egregious official conduct that shocks the conscience, but nothing of the actions of White, Ogden, or Suzuki would shock the consciousness of society and cannot be deemed a due process violation. And again, Hamaki doesn't have a constitutional right not to be subject to investigation. And the fact that Hamaki chooses to introduce facts regarding an expert opinion in his initial brief to this court for the first time on appeal is inappropriate, and we would ask the court to not consider that because it infringes on the right of the district court and the long-standing rules of this court that all facts should be presented to the district court and all legal arguments should be made so that a proper determination can be made in the district court. Hamaki then turns to a stigma plus analysis. And again, stigma, as this court has held, stigma alone cannot constitute deprivation protected by the procedural guarantees of the 14th Amendment. And clearly, as this court has already noted, Hamaki suffered no property or liberty deprivation without due process. He suffered no loss of rank and no loss of pay. He was placed on administrative leave subject to the completion of internal investigation that resulted in charges being filed against him. Hamaki received all the process that he was due under the Indiana statutes, and I have indicated again that for the first time on appeal, the stigma plus arguments are made on behalf of Hamaki. Again, those were not made at the district court level and should be deemed waive. I believe that the court's holding in SWCC is directive in this case and instructive. As Judge Posner said, speaking for this court in SWCC, property claims under the 14th Amendment do not extend to purely dignitary or otherwise non-pecuniary dimensions of employment. The actionable event is discharge, and that hasn't happened in this case. Therefore, we would ask the court to affirm the district court's decision. Okay. Thank you, Mr. Boyles. Mr. Cooper? Mr. Hamaki understands, and I understand, that he can't tell the police department, hey, you don't have a right to investigate me. The issue is, there came a point when there was an effort to cause Mr. Hamaki to give up his right to remain protection. Once again, I point the court to Garrity at 499, to Lisbonat at 314 U.S. 219 at page 241. I understand defendants to say that because Hamaki did not answer questions, there is not a Fifth Amendment question. I am saying that there is a Fifth Amendment question because of what happened, and that is what happened in the room, and what happened subsequently. Subsequently, there was an adverse action. I understand. The municipality fixed things at some point. With regard to the stigma plus claim, I point to rape. I think rape makes crystal clear that a complaint need not specify legal theories. I used terms such as reputational damage, but I think reputational damage would fit nicely into stigma plus and vice versa. Granted, Judge Williams, if the facts aren't there, the facts aren't there, but I think that rape certainly provides Officer Hamaki an opportunity to assert a stigma plus claim. Had Officer Hamaki waived and submitted voluntarily, had he signed the document, Officer Hamaki would have given up his Garrity protection. That means that had he answered questions, he would not have had Garrity protection. He had to choose between a rock and a hard place. Again, I point to Boyd versus the United States. Okay. Thank you. Thank you. Thank you, Mr. Cooper and Mr. Boyles.